# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cv-550-FDW
# (3:12-cr-62-FDW-1)

| | |
|---|---|
| JOHN MOORE, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I.    BACKGROUND

Petitioner John Moore used an Apple computer to access and view thousands of images of child pornography. (Crim. Case No. 3:12-cr-62-FDW, Doc. No. 25 at 3-6: PSR). Authorities discovered his actions after Petitioner brought the computer to an Apple Store for repair, and technicians discovered a video containing child pornography. (Id. at 3). The technicians contacted authorities, and agents subsequently obtained a warrant for the computer. (Id. at 4). In August 2011, agents interviewed Petitioner while he was at his job at a K&W Cafeteria in Myrtle Beach, South Carolina. (Id. at 5). Three days later, agents interviewed Petitioner at the FBI office in Charlotte, North Carolina, and Petitioner admitted that he repeatedly searched websites containing child pornography and viewed approximately 2,000 images of child pornography. (Id. at 5-6).

Before Petitioner's indictment and arrest, he hired the Liberty Bell law group to represent him. (Doc. No. 1 at 4; Crim. Case No. 3:12-cr-62-FDW, Doc. No. 35 at 13: Sent. Hr'g Tr.).

1

Although a public defender represented Petitioner during his initial appearance, in November 2012 Petitioner's family hired Joseph Bell, Jr., to represent Petitioner. See (Crim. Case No. 3:12-cr-62-FDW, Doc. No. 17 at 1). In April 2013, Petitioner pleaded guilty straight up to one count of possession child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Id., Doc. No. 34: Rule 11 Plea Hr'g Tr.). During the plea hearing, Petitioner testified that no one had threatened, intimidated, or forced him to plead guilty and that no one had made him promises of leniency or a light sentence to induce him to plead guilty. (Id. at 8). Petitioner affirmed that he was guilty of the charge. (Id. at 7). He also affirmed that he had had enough time to discuss any possible defenses with his attorney and that he was satisfied with his attorney's services, saying, "I thank God for him." (Id. at 8-9). Petitioner reviewed and signed the written acceptance of plea form, and the magistrate judge found that his guilty plea was knowingly and voluntarily made and accepted it. (Id. at 12; Doc. No. 13: Acceptance and Entry of Guilty Plea).

Six months later, Petitioner wrote a pro se letter to the Court, asserting that Bell had provided "insufficient counsel." (Id., Doc. No. 16: Motion for Inquiry of Counsel). Bell moved to withdraw as counsel, and this Court ultimately granted his motion and appointed attorney Denzil Forrester to represent Petitioner. United States v. Moore, 681 F. App'x 241, 243 (4th Cir. 2017). Over a year after Petitioner pled guilty, he moved to withdraw his plea. (Crim. Case No. 3:12-cr-62-FDW, Doc. No. 30: Motion to Withdraw Guilty Plea). This Court held four hearings to consider Petitioner's motion. Moore, 681 F. App'x at 243. Additionally, the Court ordered a competency evaluation of Petitioner, and he was found to be competent. (Id.).

Petitioner argued that he should be allowed to withdraw his guilty plea because his plea was involuntary because Bell had pressured him to plead guilty and financial considerations had created a conflict of interest and colored Bell's advice. (Id.). The Court heard testimony from

Petitioner's mother, Elizabeth Griffin Moore, and his sister, Mary Katherine Baer, about the retention of Petitioner's counsel. (Crim. Case No. 3:12-cr-62-FDW, Doc. Nos. 56, 75: Hr'g Trs.). Moore testified that she and her husband had hired an attorney named "Gina" from California to represent Petitioner, but they sought new counsel after Gina told them that she would need additional money to represent Petitioner. (Id., Doc. No. 75 at 2, 8, 10).

Moore testified that she then had entered into a verbal contract with Bell to represent Petitioner for $25,000. (Id. at 9-10). Moore's brother, James Griffin, paid the legal fees, which had amounted to $47,000. (Id. at 10-12). Moore testified that, around March 2014, Petitioner's sister Mary Katherine Baer asked Bell about his fees and requested an accounting. See (Id. at 13, 29, 36, 56). Moore testified that she felt Petitioner had been bullied into pleading guilty. (Id. at 51). In her own testimony, Petitioner's sister Baer testified that Bell had told her that her brother would likely receive a four- to seven-year sentence. (Id., Doc. No. 56 at 23). Shortly thereafter, Baer discovered that her uncle James Griffin had overpaid Bell. (Id. at 30-31). Bell eventually issued a refund. See (Id., Doc. No. 75 at 15).

Bell testified that his fee was to be $35,000, plus expenses. (Id. at 113-14, 122). He hired a forensic expert, who reviewed the hard drives and evidence from Petitioner's computer. (Id. at 116-17). Bell discussed the findings with Petitioner. (Id. at 117). Bell testified that he also discussed the sentencing guidelines with Petitioner, but he did not promise Petitioner that he would be sentenced to four to six years. (Id. at 118). Bell filed objections to the presentence report, which, if granted, would have resulted in a guideline range of 51 to 63 months of imprisonment. (Id. at 119-20). Bell had a copy of Petitioner's confession that he was the one viewing child pornography. (Id. at 120). Bell testified that he would have proceeded to trial if Petitioner had asked him to. (Id. at 122). Bell also testified that he did not discover the

3

overpayment until after Petitioner had pleaded guilty. (Id. at 124-25). Bell testified that the financial situation played no role in the advice that he offered and that he had not coerced Petitioner to plead guilty. (Id. at 125-26). He acknowledged that Petitioner expressed dissatisfaction with his decision after he pleaded guilty. (Id. at 126). According to Bell, he had researched whether to file a motion to suppress, but he did not believe there was a basis for moving to suppress the evidence because Petitioner was not in custody when he made the statements admitting to viewing child pornography and his meetings with the FBI were voluntary. (Id. at 128-29).

This Court denied Petitioner's motion to withdraw his plea, making express findings on the factors set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Specifically, this Court found that Bell "was a 'very credible witness,' who had drawn on his extensive experience to give Petitioner 'very good advice' regarding [his] guilty plea"; that there was no evidence that Petitioner's plea was involuntary, in light of the Rule 11 colloquy; and that there was overwhelming evidence of Petitioner's guilt and no basis to challenge his confession, so Petitioner could not credibly assert his legal innocence. See Moore, 681 F. App'x at 244 (quoting findings of the district court). Petitioner continued to maintain his innocence at sentencing, when the Court allowed him to convert his guilty plea to an Alford plea, and, consequently, denied any adjustment to the guidelines range for acceptance of responsibility. Id. at 244-45. This Court sentenced Petitioner to 108 months of imprisonment, the bottom of the advisory guidelines range. (Crim. Case No. 3:12-cr-62-FDW, Doc. No. 58: Judgment).

Petitioner appealed, arguing that this Court had impermissibly participated in the plea discussions by encouraging him to enter an Alford plea, that he received ineffective assistance of counsel, and that this Court erred by denying his motion to withdraw his guilty plea. The Fourth

Circuit affirmed Petitioner's conviction and sentence. Moore, 681 F. App'x at 244. The Fourth Circuit declined to reach Petitioner's ineffective assistance claim and held that the Court had not erred in denying Petitioner's motion to withdraw his guilty plea, noting that this Court had determined that "Moore had received the close assistance of able and experienced counsel." Id. at 245-46.

The Supreme Court denied Petitioner's petition for a writ of certiorari on October 2, 2017. Moore v. United States, 138 S. Ct. 148 (2017). Petitioner filed the pending motion to vacate on October 2, 2018, arguing that his confession was coerced, his privilege against self-incrimination and his due process rights were violated, and he received ineffective assistance of counsel. (Doc. No. 1 at 12). Following this Court's order, he corrected his motion to affirm that it was filed under penalty of perjury. (Doc. Nos. 4, 5). The Government filed its Response on February 11, 2019. (Doc. No. 6).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. As discussed above, after examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines, 423 F.2d at 529.

## III. DISCUSSION

### A. Petitioner's Pre-Plea Challenges

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263,

5

279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992). Here, Petitioner's allegations center on alleged violations of his constitutional rights that occurred before his guilty plea. Specifically, he asserts that his conviction was obtained by a coerced confession, that the FBI violated his right against self-incrimination during his pre-indictment interviews, and that the FBI violated his due process rights, as well as the right to proceed to trial, during these interviews. See (Doc. No. 1 at 5-8). Because all of these claims involve pre-plea conduct, Petitioner waived these issues by pleading guilty.[1]

Moreover, these claims merely reiterate the allegations that Petitioner previously made to this Court during the hearings on his motion to withdraw his guilty plea. As this Court previously held, there was no basis for challenging his confession to the FBI. See Moore, 681 F. App'x at 244. Furthermore, Petitioner failed to raise these issues on appeal, so they are procedurally defaulted. See Bousley v. United States, 523 U.S. 614, 621-22 (1998) (a defendant must show cause and prejudice, or actual innocence, to overcome a procedural default for failing to raise an issue on appeal); United States v. Frady, 456 U.S. 152, 165 (1982) (a § 2255 motion is not a substitute for a direct appeal); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008).

---

[1] Petitioner also asserts that the magistrate judge failed to comply with Rule 11 by asking him the "62 McCarthy questions." (Doc. No. 1 at 8). Although this appears to be a reference to McCarthy v. United States, 89 S. Ct. 1166 (1969), this allegation is dismissed as conclusory and because Petitioner had two plea hearings and has not identified any deficiencies in either hearing. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it is proper to dismiss § 2255 claims based on vague and conclusory allegations).

Finally, these claims also fail on the merits because Petitioner has offered no evidence of coercion or basis for suppressing his own statements. A person who is not in custody may be questioned without a Miranda warning. United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001). As was noted during the hearings on Petitioner's motion to withdraw his guilty plea, his first interview with the FBI took place in the dining room of a K&W Cafeteria, and Petitioner admitted that he had never asked to leave during the second FBI interview, when he went to the Charlotte FBI office. Thus, Petitioner's assertions are insufficient to show that, under the totality of the circumstances, his freedom was curtailed to the degree associated with a formal arrest.

In sum, for the reasons stated herein, Petitioner's claims related to conduct occurring before his guilty plea are without merit.

**B. Petitioner's Claims of Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the

7

petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner argues that he received ineffective assistance of counsel from two attorneys. He first contends that he paid an attorney with the Liberty Bell law group $7,500 "to prevent the indictment," that this attorney requested $30,000 to go to trial, and that she "dropped his case" when he could not pay the money. (Doc. No. 1 at 4). Petitioner also argues that his second attorney, Bell, had a conflict of interest because Bell charged Petitioner's uncle more than $25,000. (Id.). According to Petitioner, Bell failed to prepare or raise "all possible" defenses on his behalf, and Petitioner would have proceeded to trial if Bell had not promised him that he would receive a three- to five-year sentence if he pleaded guilty. (Id.). For the following reasons, both claims are without merit.

First, as to Petitioner's claim of ineffective assistance based on representation of counsel before Petitioner was indicted, the Sixth Amendment right to counsel only attaches at or after adversary judicial proceedings have been initiated against a defendant. United States v. Gouveia, 467 U.S. 180, 187-88 (1984). Accordingly, Petitioner's assertion that his first attorney provided ineffective assistance of counsel will be dismissed because this representation preceded the charges against him. See (Doc. No. 1 at 4). Moreover, the record shows that Petitioner's first attorney never filed a notice of appearance on his behalf. See (Crim. Case No. 3:12-cr-62-FDW, Doc. No. 4 at 12 (appointing Federal Public Defender to represent Petitioner when he was arrested in Florida)); Doc. Entry dated Nov. 5, 2012 (public defender Kevin Tate appeared on Petitioner's behalf at the initial appearance in North Carolina). Additionally, this claim is without merit because Petitioner contends only that this attorney did not prevent his indictment and "dropped" his case once she learned that he would not be able to pay her retainer. (Doc. No. 1 at 4). It is not ineffective assistance to decline to serve as retained counsel when a client cannot pay the required fee. Cf. United States v. Oliver, 406 F. App'x 808, 811 (4th Cir. 2011) (holding that even "[a] fee dispute does not ordinarily establish an actual conflict" of interest). And Petitioner suggests no basis on which counsel could have prevented his indictment.

Next, Petitioner purports to bring a claim of ineffective assistance of counsel against attorney Bell based on Bell's conduct related to advising Petitioner regarding a guilty plea. When considering a motion to withdraw a guilty plea, the standard for determining whether a defendant had the close assistance of counsel is the same as the two-part test for ineffective assistance under Strickland. See Hill v. Lockhart, 474 U.S. 52, 58 (1985); United States v. Bowman, 348 F.3d 408, 416 (4th Cir. 2003). Here, as discussed, this Court previously determined that Bell had provided Petitioner with the close assistance of competent counsel.

(Crim. Case No. 3:12-cr-62-FDW, Doc. No. 75 at 221-25). Petitioner merely reasserts the claims that he made previously, namely that Bell had a conflict of interest because he overcharged Petitioner's uncle; that Petitioner pleaded guilty because Bell promised him a lower sentence than if he proceeded to trial (three to five years); and that counsel Bell failed to "use all possible federal criminal defenses on [Petitioner's] behalf." (Doc. No. 1 at 4). As this Court previously determined, Bell credibly testified that the attorney's fees did not impact his decisions or advice. (Crim. Case No. 3:12-cr-62-FDW, Doc. No. 75 at 226-28). Bell also testified that he never promised Petitioner a specific sentence. Additionally, Petitioner's own sworn representations during the plea hearing show that he did not rely on any promises of leniency in pleading guilty and that he discussed potential defenses with counsel. Finally, the Court determined that Bell was an experienced attorney who provided good advice, particularly given Petitioner's confession and the expert report from the forensic analysis of Petitioner's computer. (Id. at 227-28). Because Petitioner has not shown deficient performance or prejudice, this claim will be dismissed. See Strickland, 466 U.S. at 687-88, 694; cf. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding petitioner could not raise on collateral review issues that had previously been determined by the court).

In sum, for the reasons stated herein, Petitioner's ineffective assistance of counsel claim is without merit.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: February 14, 2019

Frank D. Whitney
Chief United States District Judge